**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**RODNEY L. JONES**
**ADC# 148884**                                                                                  **PETITIONER**

**VS.**                          **CASE NO.: 5:15-CV-357-BRW-BD**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                                          **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.      Procedure for Filing Objections**

The following Recommended Disposition ("Recommendation") has been sent to

Judge Billy Roy Wilson.  Any party may file written objections with the Clerk of Court

within fourteen (14) days of filing this Recommendation.  Objections must be specific

and must include the factual or legal basis for the objection.  An objection to a factual

finding must identify the finding of fact believed to be wrong and describe the evidence

that supports that belief.

By not objecting, any right to appeal questions of fact may be waived.  And, if no

objections are filed, Judge Wilson can adopt this Recommendation without independently

reviewing the record.

**II.     Background**

A.      Trial Proceedings

A Van Buren County, Arkansas jury convicted Petitioner Rodney Jones of capital

murder in the shooting death of his ex-wife, Orzona Fischer.  The State sought the death

penalty, but the jury sentenced Mr. Jones to life imprisonment without parole.  *Jones v. State*, 2012 Ark. 38, 1 (2012).  The Arkansas Supreme Court described the evidence presented at trial as follows:

> On September 5, 2008, appellant traveled from Thornton, Colorado, to Clinton, Arkansas, where his ex-wife and their three children lived with her husband, Lynn Fischer. Appellant drove approximately fifteen hours, arriving in Clinton late afternoon. After resting, appellant drove to the Fischers' residence, parked a short distance from the house, and took a position approximately 30 feet from the front window of the house. Appellant was armed with a scoped, Marlin lever-action 30-30 that he brought with him from Colorado, and he fired one shot into the front window of the residence, fatally striking Mrs. Fischer in the back.
>
> Members of the Van Buren County Sheriff's Department and the Arkansas State Police Department investigated the murder. State Police agents Stacy Rhoads and Joe Carter traveled to Thornton, Colorado, to interview appellant. They first interviewed appellant on September 6, 2008. The officers advised appellant of his Miranda rights, which he waived. During the interview, appellant claimed to have been in Colorado at the time of the shooting. The interview, including appellant's waiver, was videotaped.
>
> After their attempts to corroborate appellant's alibi failed and they received incriminating information from appellant's girlfriend, the officers interviewed appellant a second time. Again, the officers read appellant his Miranda warnings, and the interview was videotaped and recorded. After the officers confronted appellant with contradictions in his story and told him that they had been unable to corroborate his alibi, appellant confessed. Appellant gave a detailed account of how he carried out the crime, as well as the location in Kansas where he disposed of the murder weapon. At the end of the second interview, appellant invoked his right to remain silent and asked for an attorney, at which time, the interview terminated.

*Jones v. State*, 2012 Ark. 38, 1-2 (2012).

For his defense at trial, Mr. Jones presented expert testimony of Dr. Bob Gale, a forensic psychiatrist and neurologist, who testified that at the time of the shooting, Mr.

Jones was suffering from depression and fibromyalgia and described the neurological effect on the brain of the medications Mr. Jones was taking.  He testified that the medications Mr. Jones was prescribed could produce psychosis, and he opined that Mr. Jones had experienced a "brief psychotic disorder," which, in his opinion, constituted a mental disorder and defect.  Dr. Gale further opined that Mr. Jones was unable to conform his conduct to the requirements of the law due to his delusional state.  (#7, Volume 7 at pp 1351-1402)  The jury, however, rejected Dr. Gale's testimony in favor of the testimony of the State's expert witness and convicted Mr. Jones.

B.      Direct Appeal

On direct appeal, Mr. Jones argued that the circuit court erred when it denied his motions for mistrial and failed to instruct the jury on the lesser-included offenses of reckless manslaughter and negligent homicide.  *Jones v. State*, 2012 Ark. 38, *3.  The Arkansas Supreme Court considered all of Mr. Jones's claims but rejected the arguments and affirmed the judgment.  *Id*. at *8-*9.

C.      Rule 37 Petition

After the Supreme Court affirmed the circuit court's judgment, Mr. Jones filed a petition under Rule 37.1 of the Arkansas Rules of Criminal Procedure in the Van Buren Circuit Court.  (#6-6 at pp. 7-14)   In the petition, Mr. Jones claimed he was not afforded effective assistance of counsel at trial because counsel:  (1) failed to fully investigate or prepare his defense that during the time of the murder he was suffering from psychosis

induced by prescription drugs Cymbalta and Chantix; (2) failed to advise him of a plea

offer the State made for a 40-year sentence; (3) failed to argue that the statements he gave

to police were involuntary because he was suffering from a mental defect, delusions, and

psychosis at the time.  (#6-6 at pp. 7-11)

The circuit court held a hearing on the petition, at which time Mr. Jones and his

trial counsel testified.  (*Id*. at 205-236)  In a written order, the circuit court, applying the

standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), denied the

petition.  (*Id*. at pp. 173-74)

Mr. Jones appealed the circuit court's decision denying his Rule 37 petition to the

Arkansas Supreme Court.  On appeal, Mr. Jones argued:  (1) trial counsel was ineffective

for failing to completely investigate his "involuntary drug-induced psychosis" by looking

beyond the warning labels and investigating other similar cases; (2) he was denied

assistance of counsel during his Rule 37 proceedings; (3) the circuit and Arkansas

Supreme Court denied him use of a trial transcript during the Rule 37 process; and

(4) trial counsel was ineffective during plea negotiations.  (#6-7 at p. 6, 31-55)

The Arkansas Supreme Court, applying the standard set forth in *Strickland,*

affirmed the circuit court's order denying Mr. Jones relief on his Rule 37 petition.  *Jones*

*v. State*, 2014 Ark. 448, 2014 WL 111284575  (2014).

D.     Petition for Writ of Habeas Corpus

In this petition, Mr. Jones claims:  (1) trial counsel was ineffective for failing to fully investigate his claim that he suffered from involuntary, prescription-drug-induced psychosis at the time of the murder; (2) he was denied assistance of counsel in his post-conviction proceedings; (3) he was denied a free transcript of his direct appeal during the Rule 37 process; and (4) trial counsel was ineffective during plea negotiations for advising him to reject the plea deal offered by the State.

Respondent Wendy Kelley denies that Mr. Jones is entitled to habeas relief.  She contends: (1) trial counsel was not ineffective; (2) Mr. Jones was not entitled to counsel during his Rule 37 proceedings; (3) Mr. Jones procedurally defaulted his claim related to the trial transcript or, alternatively, the claim lacks merit; and (4) Mr. Jones has not established that counsel was constitutionally ineffective during plea negotiations.  (#6)

For the reasons set forth below, Mr. Jones's petition for writ of habeas corpus should be denied.

## III.   Discussion

### A.    Standard of Review

A federal court can grant a writ of habeas corpus to a state prisoner only where a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(d)).  Relief can be granted only if the

state court decision is both incorrect and unreasonable.  *Id*. (quoting *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010)).  The Court must presume the state court's factual findings are correct, and it is Mr. Jones's burden to rebut this presumption by clear and convincing evidence.  *Id*. (citations omitted).

B.     Appointed Counsel

Mr. Jones claims the circuit court violated his due process rights by failing to appoint counsel to represent him during the Rule 37 proceedings.  It is established law that there is no constitutional right to an attorney in state post-conviction proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566 (1991).

Here, before the Rule 37 hearing began, Mr. Jones moved for the court to appoint counsel and to stay the hearing.  (#6-6 at p. 207)  The court stated that Mr. Jones did not have a constitutional right to counsel and exercised its discretion under Arkansas Rule of Criminal Procedure 37.3(b) to deny the motion.  (*Id*. at p. 209) The Arkansas Supreme Court agreed.  The Court found that Mr. Jones had not met his burden of showing his petition included a meritorious claim so as to justify appointment of counsel.  *Jones*, 2014 Ark at *3-*4.  The Court also discussed *Martinez v. Ryan*, __U.S. __,  132 S.Ct. 1309 (2012) and *Trevino v. Thaler*, __U.S. __, 133 S.Ct. 1911 (2013), and concluded that neither case "dictated that the trial court was required to appoint counsel for appellant." *Id*. at *4.

6

The state courts' decisions were not contrary to, or an unreasonable application of, clearly established federal law. Neither *Martinez* nor *Trevino* held that the state is required to appoint counsel to a petitioner seeking relief in a post-conviction proceeding.

Nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. During the Rule 37 hearing, Mr. Jones capably presented his arguments. The court admitted a written statement offered by Mr. Jones and took testimony from Mr. Jones and his trial counsel. (*Id*. at 209-36) Mr. Jones was given a full opportunity to present his case and to question trial counsel regarding his complaints. (*Id*.) The circuit court's denial of his motion to appoint counsel did not violate Mr. Jones's due process rights.

C.    Free Transcript[1]

Mr. Jones claims that, in order to pursue his ineffective assistance of counsel claims in the Rule 37 proceeding, he was entitled to a free copy of his direct appeal transcript instead of copies of the appellate brief and abstract. The Arkansas Supreme

---

[1]It is unnecessary to decide whether Mr. Jones procedurally defaulted his claim related to the trial transcript because, under the circumstances of this case, it is more efficient to proceed to the merits. See *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006), cert. denied, 549 U.S. 1034 (2006) (holding that procedural default is not a jurisdictional bar, and federal courts can address the merits of an apparently defaulted claim "in the interest of judicial economy"); see also *Kemp v. Hobbs*, 2012 WL 2505229 (E.D.Ark. June 28, 2012) ("Where it is more efficient to do so, therefore, this Court may resolve [habeas] claims on the merits rather than navigating through a procedural-default thicket.") (citing 28 U.S.C. § 2254(b)(2) and *McKinnon v. Lockhart*, 921 F.2d 830, 833 n. 7 (8th Cir.1990)).

Court has consistently held that a Rule 37 petitioner is not entitled to a copy of the trial

transcript at public expense unless he demonstrates a "compelling need for specific

documentary evidence" to support an allegation contained in a petition for post-

conviction relief.  *Grant v. State*, 2010 Ark. 286, 6 (2010) (citing *Wright v. State*, 2010

Ark. 155, 2010 WL 1253180 (per curiam); *Layton v. State*, 2009 Ark. 438, 2009 WL

3048447 (per curiam); *Moore v. State*, 324 Ark. 453, 921 S.W.2d 606 (1996) (per

curiam); see *Austin v. State*, 287 Ark. 256, 697 S.W.2d 914 (1985) (per curiam)).

Similarly, petitioners seeking a writ of habeas corpus under 28 U.S.C. section 2255 do not

have a right to a free transcript.  See *U.S. v. MacCollom*, 426 U.S. 317, 322-23 (1976).

Indigence alone does not entitle a state or federal habeas petitioner to a copy of his trial

transcript at public expense.  28 U.S.C.A. § 753(f) (transcripts shall be paid only if the

trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the

transcript is needed to decide the issue presented by the suit or appeal); *Grant*, 2010 Ark.

at 6-7 (citing *Gardner v. State*, 2009 Ark. 488, 2009 WL 3235627 (per curiam);

*Washington v. State*, 270 Ark. 840, 606 S.W.2d 365 1980) (per curiam)).

    Here, Mr. Jones did not establish a compelling need for specific evidence to

support his Rule 37 petition that was not available from the appellate brief and abstract.

Mr. Jones's Rule 37 claims centered around his counsel's failure to investigate prior to

trial and his advice during plea negotiations.  Neither his counsel's investigations nor the

plea negotiation discussions between Mr. Jones and his counsel would have been

included in the requested transcript.  Furthermore, Mr. Jones submitted a portion of the trial transcript and abstract to the Court at his Rule 37 hearing in support of his claims. (#6-6 at pp. 240-250)  The circuit court did not err in denying Mr. Jones a free copy of the direct appeal transcript.

D.     Ineffective Assistance of Counsel

Mr. Jones claims his defense counsel was ineffective for failing to fully investigate his claim that he suffered from an involuntary drug-induced psychosis at the time of the murder and for advising him to reject the plea offered by the State during plea negotiations.

In order to prevail on his habeas corpus claim based on ineffective assistance of counsel, Mr. Jones must show:  (1) that his trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the outcome would have been different but for the substandard performance of trial counsel. *Strickland*, 466 at 687-94.  A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial.  *Wiggins v. Smith*, 539 U.S. at 534 (quoting *Strickland*, 466 U.S. at 694).  The Court's scrutiny of counsel's performance is highly deferential, and the Court applies a strong presumption that counsel's conduct falls within the "wide range of reasonable professional judgment."  *Bucklew v. Luebbers*, 436 F.3d

1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689); see also *Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006)).

In the circuit court's written order denying Mr. Jones's Rule 37 petition, it found that Mr. Jones's counsel had advised him of the plea offer, but that Mr. Jones had rejected it. (#6-6 at p. 173)  The court further found that counsel *had* presented evidence of the adverse side-effects of Mr. Jones's medications through the expert testimony of Dr. Bob Gale, who testified that the medications together with Mr. Jones's depression had caused him to have a brief psychotic disorder.  (*Id*. at 174)  Additionally, the court found that counsel had successfully admitted warning labels and inserts for the medications, that showed the medications' possible adverse side-effects.  (*Id*. at 174)  Applying the *Strickland* standard, the Court concluded the services provided by trial counsel were "clearly within the wide range of reasonable professional assistance." (*Id*.)  Mr. Jones appealed the denial of his claims of ineffective assistance of counsel, and the Arkansas Supreme Court affirmed.  *Jones*, 2014 Ark. 448.

This Court's task is to determine whether the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

1.   Defense Strategy

Mr. Jones alleges that trial counsel was ineffective for failing to fully investigate his claim that he was suffering from an involuntary, drug-induced psychosis at the time of the murder.  More specifically Mr. Jones argues that his counsel, "failed to look beyond the warning label," and "failed to investigate the myriad of other well-documented cases similar to Petitioner's and the plethora of warning [sic] on the use of Chantix alone and with other medications."  (#1 at p. 4)   Mr. Jones points to "episodes of psychotic violence" associated with Chantix that were reported by other users of the drug and contends that, if his attorney had performed a "simple Internet search," he would have easily obtained data from the Food and Drug Administration's ("FDA") Adverse Event Reporting System "on Chantix and its cause for murder."  (#1 at p. 5)

In reviewing the circuit court's decision denying the Rule 37 petition, the Arkansas Supreme Court noted that, at the Rule 37 hearing, Mr. Jones's trial counsel testified that the effect of the medications prescribed to Mr. Jones formed the "cornerstone" of the defense that, at the time of the murder, Mr. Jones had a mental disease or defect that prevented him from conforming his conduct to the requirements of the law.  *Jones*, 2014 Ark. 448 at *2.

The Court highlighted the fact that neuropsychiatrist Bob Gale, who had examined Mr. Jones, testified that Mr. Jones was suffering from depression and fibromyalgia and that his prescribed medications, including Chantix and Cymbalta, could produce psychosis.  *Id*.  The Court also noted that Dr. Gale had testified that his conclusions were

11

based on a number of factors, including the stressors in Mr. Jones's life, his chronic pain and depression, the neurological effect of the drugs he was taking on his brain, and the medical evidence that demonstrated the dangers of the drugs. *Id*. Dr. Gale testified that Mr. Jones had suffered a brief psychotic disorder and, at the time of the murder, was not able to conform his conduct to the requirements of the law. *Id*.

The Arkansas Supreme Court also noted that another expert who had evaluated Mr. Jones and testified on behalf of the State agreed that Mr. Jones suffered from depression, but concluded Mr. Jones had the capacity to form the culpable mental state necessary to commit the offense and engage in purposeful behavior. *Id*. The expert concluded that, for purposes of the applicable statute, Mr. Jones was not suffering from a mental disease or defect at the time of the murder. *Id*.

The Arkansas Supreme Court's factual findings are supported by the record, and its determination that it was for the jury to assess the credibility of the expert witnesses and decide whom to believe is not contrary to federal law. See *United States v. Scheffer*, 523 U.S. 303, 313, 118 S. Ct. 1261, 1266-67 (1998) ("[d]etermining the weight and credibility of witness testimony, therefore, has long been held to be the part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." (internal citation omitted)); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005)(credibility is the province

of the jury, and the jury is free to determine what weight should be given to the testimony in light of the evidence).

Mr. Jones's complaint that his counsel should have done more testing to determine the severity of his mental problems also fails because Mr. Jones has not met his burden of establishing that there was specific information that his counsel could have uncovered or that furthering testing would have revealed; nor has he demonstrated that the unidentified additional information would have changed the outcome at trial.  At the Rule 37 hearing, defense counsel testified that the only other test he was aware of that could have been performed on Mr. Jones was a brain scan, but that UAMS would not do the scan for a criminal case.  (#6-6 at p. 224)  Further, he testified that he had also engaged a second expert, a psychologist, to evaluate Mr. Jones, but that expert had not agreed with the defense's position, so was not called to testify.  (*Id*. at pp. 222-223)  In light of the testimony, it was not unreasonable for the state courts to conclude that Mr. Jones had not met his burden of coming forward with additional information that his counsel could have discovered upon further investigation that would have changed the outcome of the trial.

The Arkansas Supreme Court's determination that counsel's representation at trial was within the wide range of reasonable professional judgment and that counsel had provided the jury with sufficient information to determine whether Mr. Jones suffered from a mental disease or defect, is not contrary to established federal law or an unreasonable determination of the facts in light of the evidence presented.

2.      Plea Negotiations

Mr. Jones also complains his counsel was ineffective for advising him not to accept a plea offer of forty years in prison in exchange for entering a plea of guilty.  A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) (citing *Missouri v. Frye*, 132 S.Ct. 1399 (2012)). During plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

At the Rule 37 hearing, Mr. Jones conceded that he and counsel had discussed the plea offer, and that *he* had decided not to accept it.  (#6-6 at p. 217)  Mr. Jones complained, however, that he would not have made the decision to reject the offer had counsel not "all but guaranteed" him he could bring in a verdict of guilty to a lesser offense than capital murder.  *Jones*, 2014 Ark. at *4.

For his part, trial counsel testified that he had discussed the plea agreement with his client but did not advise Mr. Jones to reject the plea offer because the State was seeking the death penalty.  (*Id*. at p. 229)  Counsel testified that it was his practice to advise defendants accused of capital murder to accept any plea offer that would avoid the death penalty.  (*Id*.)  Further, he testified that during his discussions with Mr. Jones about the offer, he did not guarantee that he could achieve a verdict of less than capital murder. (*Id*. at pp. 229-30)  Finally, counsel testified that Mr. Jones had given him the understanding that he would not accept a plea of more than thirty years' imprisonment

14

because he was going to die in prison anyway if he received a longer sentence.  (*Id*. at p.

228)

The Arkansas Supreme Court's determination that there was insufficient factual

support for Mr. Jones's assertion that counsel's performance during plea negotiations was

below the standard is not unreasonable in light of the evidence presented and is not

contrary to clearly established federal law.

## IV.   Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a

certificate of appealability.  Rule 11 of the Rules Governing Section 2254 Cases in the

United States District Court.  The Court can issue a certificate of appealability only if Mr.

Jones has made a substantial showing that he was denied a constitutional right.  28 U.S.C.

§ 2253(c)(1)-(2).  In this case, Mr. Jones has not provided a basis for the Court to issue a

certificate of appealability.  Accordingly, a certificate of appealability should be denied.

## V.   Conclusion

Mr. Jones's claims for habeas relief lack merit.  The Court recommends that Mr.

Jones's petition for writ of habeas corpus (#1) be denied and dismissed, with prejudice.

The Court further recommends that no certificate of appealability be issued.

DATED this 29th day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE